UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| SOUTH BEACH SECURITIES, INC. ) | |
| ) | |
| Appeals of: ) | Case Nos. 08 C 1135 & 08 C 1136 |
| ) | Bankruptcy Case No. 05 B 16679 |
| SOUTH BEACH SECURITIES, INC., ) | |
| Debtor, ) | Judge Joan H. Lefkow |
| ) | |
| SCATTERED CORPORATION, ) | |
| Creditor. ) | |

## MEMORANDUM OPINION AND ORDER

This case arises from two appeals from an order dated November 1, 2007 of the bankruptcy court denying confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq*., and the subsequent judgment of dismissal entered January 2, 2008 (B. Dkt. No. 173).[1] South Beach Securities, Inc ("South Beach"), and its sole creditor, Scattered, Inc. ("Scattered"), seek reversal and remand for entry of an order confirming the plan. The United States Trustee is the sole responding party.

The following summary of the underlying facts, which appear to be undisputed, is based on the parties' briefs (Dkt. Nos. 14, 28) and the November 1, 2007 memorandum opinion of the

---

[1] Case No. 08 C 1135 is the appeal of Scattered. Case No. 08 C 1136 is the appeal of South Beach. By agreement of all parties, the cases were consolidated. (Dkt. No. 5). Both notices of appeal were filed January 14, 2008, within 10 (court) days of the judgment of dismissal, in accord with Fed. R. Bank. P. 8002. The appellants rely on a single set of briefs in support of their appeals. Leon Greenblatt, III, a principal of Scattered, also appealed, but his appeal was dismissed by this court on May 22, 2008 (Dkt. No. 25).
Statutory references are to title 11, United States Code, unless otherwise stated. References to "B. Dkt. No." are to the bankruptcy court's docket. References to "Dkt. No." are to this court's docket.

Honorable A. Benjamin Goldgar, the bankruptcy judge assigned to this case (Dkt. 130) (hereinafter, "Goldgar Op.").

**I.    Facts**

South Beach was once registered as a securities broker/dealer with the SEC, but at all relevant times it had no employees and no assets of alleged value other than $3.2 million in net operating losses ("NOLs"). There was, indeed, scant evidence that South Beach had ever actually done business, and the provenance of the NOLs "was not explained." Goldgar Op. at 4. South Beach's sole officer/director is named William Johnson, who receives no compensation and has had no known participation in the affairs of South Beach.

South Beach is wholly owned by NOLA, LLC. NOLA has never had any business operations. NOLA's members are Leon Greenblatt II, James Nichols, and Robert Jahelka. NOLA's only asset is the stock of South Beach. Teletech Systems, Inc. ("Teletech"), manages NOLA. Teletech's president at relevant times was Leon Greenblatt III ("Greenblatt"). Teletech receives no compensation for managing NOLA and Greenblatt receives no compensation from Teletech.

In January, 2001, Greenblatt arranged with Loop Corporation for South Beach to borrow $2.1 million to be used as capital and repaid over 5 years.[2] Greenblatt testified at the confirmation hearing that he "participated in the funding of" the loan. Goldgar Op. at 5. South Beach thereafter lent to NOLA $3.2 million for the purpose of purchasing the stock of Heath Risk Management, Inc. ("HRM"). In December, 2002, Loop assigned its ($2.1 million) interest

---

[2] "Loop is a small, closely-held company owned by [ ] Greenblatt, Jahelka, and Nichols, or their respective family trusts or estate planning entities." *Wachovia Securities, LLC* v. *Jahelka*, No. 04 C 3082, 586 F. Supp. 2d 972, 979 (N.D. Ill. 2008). Greenblatt holds a 50% ownership interest in Loop. *Id.* Loop's corporate address is 330 South Wells Street, Chicago. *Id.*

in the South Beach loan agreement to Scattered in exchange for $100,000. This made Scattered a creditor of South Beach. Scattered's officers and directors are Greenblatt, Jahelka and Nichols.

South Beach, Scattered, NOLA, and Teletech all use the address of 330 South Wells Street, Chicago Illinois.

On April 27, 2005, South Beach and NOLA filed voluntary petitions under chapter 11 of the Bankruptcy Code. South Beach's schedules reflected no assets of any kind except the HRM stock with a value of $0.[3] They disclosed Scattered as the only creditor, with an unsecured claim of $3.2 million. Greenblatt signed the filed documents on behalf of South Beach.

The bankruptcy court dismissed both petitions as having been filed in bad faith, contrary to § 1112(b). South Beach appealed. The district court reversed the dismissal and remanded for further proceedings (B. Dkt. No. 52). The case was reopened and South Beach filed a plan of reorganization on September 21, 2006 (B. Dkt. No. 83). The plan established two classes of creditors. Class 1 was "general unsecured claims." It had one member, Scattered. Class 2 was "holders of [equity] interests" but identified no members. The bankruptcy court, however, determined that NOLA, as holder of all of the stock of South Beach, was a class 2 member. The plan stated that both classes were impaired.

Under the plan, the interests of Class 2 creditors were to be cancelled. South Beach would then issue 1,000 shares of common stock, and the class 1 creditor was to receive these shares in satisfaction of its $3.2 million claim. South Beach would then be discharged. "Put simply," the bankruptcy court stated, "in exchange for relinquishing its large but worthless claim

---

[3]The bankruptcy court commented, "How South Beach ended up with HRM stock, when it was South Beach that had loaned NOLA money to buy HRM stock, was not explained." Goldgar Op. at 6.

against South Beach, Scattered will become the new owner of South Beach, replacing NOLA."
Goldgar Op. at 7.  In a memorandum filed August 3, 2005, South Beach and NOLA represented, in reference to the initially proposed plan,

> The value of South Beach's NOLs can only be preserved for the benefit of creditors through a plan of reorganization.  Outside of bankruptcy, NOLs are often lost when a company is sold, because the sale results in a change of ownership of more than 50%.  The Internal Revenue Code has an exception, however, which allows the preservation of NOLs where ownership is transferred to creditors under a chapter 11 plan.  Therefore, the only means by which Scattered can recover the NOLs is through the plan.  The draft plan preserves the benefit of the NOLs for the Reorganized South Beach and its equity holder.

Consol. Mem. of NOLA and South Beach Regarding the Good Faith Filing Requirement at 4 (internal citations omitted) ( B. Dkt. No. 30).  That document made no reference to threatened litigation.  The disclosure statement recited that "the sole asset of any value of the Debtor was a net operating loss ("NOL")  carryovers [*sic*] for U.S. federal income tax purposes, pursuant to section 382 of the Internal Revenue Code."  Disclosure Statement at 1 (B. Dkt. No. 89). The disclosure statement represented without explanation that South Beach waived its $3.2 million claim against NOLA for purposes of this bankruptcy case.

Scattered voted in favor of the plan.  The Trustee objected to confirmation arguing that the plan could not be confirmed because no non-insider impaired class had voted in favor of the plan as required by § 1129(a)(10) and because its principal purpose was to avoid taxes in violation of § 1129(d).

The bankruptcy court held an evidentiary hearing.  At the hearing, Greenblatt denied that Scattered, of which he was president, was an insider of South Beach, with which he had no formal relationship.  He testified that Scattered would make a sufficient capital contribution to South Beach in order for South Beach to have income sufficient for the net operating losses to be

offset against. He denied, however, that the plan's purpose was to avoid taxes. Rather, it was to avoid litigation with creditors of NOLA and Scattered.

The bankruptcy court determined that, under governing law, South Beach had failed to prove by a preponderance of the evidence that Scattered is not an insider as defined at § 101(31)(B)(iii). The court made elaborate findings about the inter-relationships among South Beach, NOLA, Scattered, Teletech, and Greenblatt, including that the members of NOLA included Greenblatt's father, that NOLA, although it had no business operations, assets, or property other than stock, was "managed" without compensation by Teletech, of which Greenblatt was the unpaid president and sole employee. The court stated,

> The evidence . . . . tended to show that Scattered does control South Beach. Scattered and South Beach have the same 330 South Wells Street, Chicago address. Greenblatt is an officer and director of Scattered and is also the sole officer and employee of the manager of South Beach's parent, NOLA. Greenblatt has acted for South Beach as its "authorized person," signing the loan agreement with Loop, and has also acted for Scattered, signing the loan assignment from Loop.
>
> In South Beach's bankruptcy, particularly, Scattered appears to have orchestrated events through its officer, Greenblatt. Although Greenblatt has no formal position with South Beach, he signed its petition and schedules, as well as each of South Beach's monthly operating reports. Greenblatt was the sole witness who testified for South Beach at the confirmation hearing; the company's only officer–a mere placeholder–did not appear, and at the Rule 2004 examination Greenblatt professed not even to know where he lives. Greenblatt helped formulate the South Beach plan. Scattered and South Beach together proposed the plan, and Scattered prepared South Beach's tax returns to ensure the plan could be confirmed.

Goldgar Op. at 14-15 (record citations omitted). The court rejected as incredible Greenblatt's "bald denial of control." *Id.* at 14.

Alternatively, the bankruptcy court found that, even if Scattered did not qualify as a person in control of the debtor under § 101(31)(B)(iii), because the list of insiders is non-exclusive, citing *inter alia*, *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996), Scattered was an insider because it had a "'a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'"[4] *See* Goldgar Op. at 15 (quoting *Krehl*, 86 F.3d at 741)(quoting legislative history)). The bankruptcy court concluded that "all the evidence [ ] suggested that Scattered is indeed South Beach's insider." *Id*. at 16. It explained,

> As the sole employed and officer of the limited liability company that manages South Beach's parent, Greenblatt directs the affairs of South Beach, executing its bankruptcy petition and schedules, filing its monthly operating reports, and signing the loan agreement with Loop. At the same time, however, Greenblatt is an officer and director of Scattered and acts for Scattered, executing the loan assignment with Loop on Scattered's behalf. The relationship is close enough to justify an insider finding.

*Id*. at 16-17. The court also noted the lack of any evidence that the transactions between Scattered and South Beach had been conducted at arms' length. Rather, the evidence was entirely to the contrary. *Id.* at 17.

Based on its finding that Scattered, being the sole impaired creditor class, was an insider, there was not at least one class of impaired claims, excluding insiders, voting in favor of the plan as required by § 1129(a)(10). Therefore, the court concluded the plan could not be confirmed.

The bankruptcy court also found that the United States Trustee had proved by a preponderance of the evidence that the principal purpose of the plan was avoidance of taxes,

---

[4] *Krehl* treated the question whether a corporation was an insider of the individual debtor under chapter 7's prohibition of discharge of a debtor's personal bankruptcy if the debtor had committed certain acts concerning an insider. Insider is defined at § 101(31)(B) for all purposes under the Code.

6

making the plan unconfirmable under § 1129(d). The court stated, "The plan's principal purpose is to put Scattered in a position to inject money into South Beach, enabling South Beach to use the net operating losses to obtain a tax deduction." Goldgar Op. at 22. It further stated,

> The principal purpose – indeed, the only purpose – of the South Beach plan is tax avoidance. Like the debtor in [*In re*] *Maxim* [*Indus., Inc*., 22 B.R. 611 (Bankr. D. Mass. 1982)], South Beach has 'no business, no employees, and no assets' – except its NOLs. Therefore, there is nothing here to reorganize, no business to resuscitate, no going concern to keep going. The whole point of the South Beach bankruptcy and the proposed plan is to make use of South Beach's NOLs. The disclosure statement makes no bones about this, stating forthrightly that the goal of canceling NOLA's stock and issuing new stock to Scattered is 'to monetize the sole valuable asset of the Debtor–the NET OPERATING LOSSES." (Discl. Stmt. at 7).
>
> If the NOLs have value, though, it is only as a tax deduction . . . .

*Id.* at 23. The court rejected Greenblatt's testimony that the purpose was to avoid litigation, noting that there was no such threatened or actual litigation.[5] If Greenblatt meant the pending litigation against NOLA, it made no difference:

> It may well be that South Beach intends to use the monies shielded from taxation under the plan to litigate or settle the actions against NOLA and Scattered. The purpose of the South Beach *plan* remains to avoid taxes on those monies, making them available for that use. A debtor proposing a chapter 11 plan designed principally to avoid taxes cannot evade the prohibition of section 1129(d) by claiming the plan's purpose is really the ultimate use to which the untaxed money will be put . . . . If South Beach's "ultimate use" argument were correct, section 1129(d) would be read out of the Code."

*Id.* at 25 (emphasis in original).

## II. Issues

The issues to be resolved on this appeal are three:

---

[5]Wachovia Securities, LLC, did sue Scattered, as well as Jahelka, Nichols, Greenblatt, and Loop, seeking to recover on a judgment debt of $2.5 million against Loop. The court ruled in favor of Wachovia by piercing the corporate veil as to Greenblatt. *See Wachovia*, 586 F. Supp. 2d at 1004 ("Loop was, in reality, little more than a façade for the operations of Greenblatt, its dominant shareholder.").

> A. Did the bankruptcy court err in finding that Scattered was an insider under § 1129(a)(1)?
>
> B. Did the bankruptcy court err in finding that tax avoidance was the principal purpose of the plan?
>
> C. Was the plan "otherwise confirmable"?

## III. Jurisdiction and Standard of Review

The United States District Court has jurisdiction to hear appeals from the final judgments of the bankruptcy court. 28 U.S.C. § 158(a). On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and the bankruptcy court's legal conclusions under the *de novo* standard. *Monarch Air Serv.* v. *Solow* (*In re Midway Airlines, Inc.*), 383 F.3d 663, 668 (7th Cir. 2004). "Mixed questions of law and fact are subject to *de novo* review." *Freeland* v. *Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008) (citing *Mungo* v. *Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)). The question of insider status is a mixed question of law and fact. *See Krehl*, 86 F.3d at 742 ("The question under section 101(31) is whether the historical facts found by the bankruptcy court meet the Code's openended definition of an insider. We think that question is properly characterized as a mixed question of law and fact."). The debtor's motivation is a question of fact. *See, e.g.*, *Luke* v. *Comm'r of Internal Revenue*, 351 F.2d 568, 572 (7th Cir. 1965) ("The determination of motivation here made is essentially factual and is entitled to great weight. It is not to be overturned unless it is demonstrated to be clearly erroneous.") (citing *Thomas E. Snyder Sons Co.* v. *Comm'r of Internal Revenue*, 288 F.2d 36, 38 (7th Cir. 1961 )). The bankruptcy court's decision to dismiss a case under § 1112(b) is reviewed for abuse of discretion. *Repurchase Corp.* v. *Bodenstein (In re Repurchase Corp.)*, No.

8

05 C 7075, 2008 U.S. Dist. LEXIS 23504, at *7 (N.D. Ill. Mar. 24, 2008) (citing *In re Woodbrook Assocs.*, 19 F.3d 312, 322 (7th Cir. 1994)).

**IV. Scattered's insider status**

A Chapter 11 debtor "has the burden of proving by at least a preponderance of the evidence" that the plan satisfies the requirements of § 1129(a). *In re Rusty Jones*, 110 B.R. 362, 373 (Bankr. N.D. Ill. 1990).[6] Section 1129(a)(10) requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." Scattered was impaired and voted to accept the plan, so the finding that Scattered was an insider foreclosed compliance with this provision.

**A. Law of the case**

Appellants argue that the law of the case doctrine required the bankruptcy court to find that (I) there is no prohibition on insiders collecting their debts through bankruptcy, and (ii) a bankruptcy court may not dismiss a case based solely on the fact that the debtor's only creditor is an insider. It bases this argument on a decision on a previous appeal to the district court reversing dismissal of the case. There the district court held the bankruptcy court's finding that the case had been filed in bad faith clearly erroneous, stating, "On the record as it existed, there was not a sufficient basis for the bankruptcy court to find that South Beach had filed its bankruptcy petition in bad faith." Mem. Op. and Order, Apr. 6, 2006 (Kennelly, J.) at 8 (B. Dkt. No. 52). The case was remanded to the bankruptcy court for further proceedings.

---

[6] "To be confirmed, a plan of reorganization must satisfy all thirteen requirements of 11 U.S.C. § 1129(a), except that if a plan of reorganization satisfies all of the requirements of § 1129(a) except for subsection (8) thereof, that plan of reorganization nevertheless may be confirmed if it also satisfies the requirements of 11 U.S.C. § 1129(b)." *In re Rusty Jones*, 110 B.R. 362, 373 (Bankr. N.D. Ill. 1990).

9

Appellants' argument is not sound. First, if the district court had decided that Scattered is or is not an insider, it would not be a matter of "law of the case;"[7] rather, it would be a binding ruling of an appellate court. That aside, the district court did not make any such finding nor preclude the bankruptcy court from considering whether South Beach's plan was confirmable. In the earlier appeal, the issue before the district court was whether the bankruptcy court had properly granted a motion to dismiss made by the Trustee before a plan had been filed. The appeal now before the court arises after the case was fully considered by the bankruptcy court. The bankruptcy court did not act contrary to directions from the district court. Nor did it rule that insiders could not collect their debts through bankruptcy or dismiss the case solely because the only creditor was an insider.

### B. Scattered's insider status

Appellants next argue that Scattered is not an insider of South Beach. An "insider" of a corporate debtor is defined in § 101(31)(B)(iii) to include "a person in control of the debtor." Whether Scattered is a person[8] in control of the debtor is a question of fact. In arguing that Scattered is not in control of the debtor, Appellants rely on Greenblatt's testimony alone that (a) Scattered is not a director of South Beach; (b) Scattered is not in control of South Beach; (c) Scattered does not directly own more than 20% of South Beach stock; (d) Scattered does not have the power to vote more than 20 % of the outstanding voting stock of South Beach in an agency or fiduciary capacity; (e) Greenblatt has never been an officer, stockholder, or employee

---

[7] "Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation." *United States* v. *Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (citing *Agostini* v. *Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)).

[8] Under § 101(41), the term "person" includes an individual, partnership, and corporation.

of South Beach; and (f) Greenblatt has never been involved in South Beach's day to day operations. South Beach relies on language from cases stating that "intrusive oversight" rather than "day-to-day control" is not control, *In re Armstrong*, 231 B.R. 746, 749-50 (Bankr. E.D. Ark. 1999); that leverage arising from a debtor-creditor relationship is not control, *In re Octagon Roofing*, 124 B.R. 522, 530 (Bankr. N.D. Ill. 1991); and that a lender not involved in day-to-day production, purchasing, personnel, etc., is not in control, *In re Technology For Energy Corp.*, 56 B.R. 307, 316 (Bankr. E.D. Tenn. 1985).

The bankruptcy court, however, specifically rejected Greenblatt's "bald denial of control," stating that "in the context of the rest of his testimony, [it] was unworthy of belief." Goldgar Op. at 14. At the relevant times, the only day-to-day activity of South Beach was arranging the various inter-corporate transactions and putting together the bankruptcy case. In that regard, the bankruptcy court properly relied on evidence that Greenblatt operated on behalf of South Beach in all of the transactions and by signing its bankruptcy petition, schedules, and monthly operating reports, participating in formulating the reorganization plan, testifying at the meeting of creditors, joining with Scattered to propose the plan, testifying at the confirmation hearing, and preparing South Beach's tax returns in preparation for confirmation. *See supra* at 6.

Appellants fault the bankruptcy court's inability to point to any evidence that Greenblatt or Scattered managed South Beach on a day-to-day basis or that he was more than a voice to which South Beach might listen. Appellants, however, had the burden of proof on the issue. They fail to point to any evidence that any person *other than* Scattered via its officer and director who is also South Beach's parent NOLA's sole officer and employee, *i.e.*, Greenblatt, was in control of South Beach. Where South Beach had no day-to-day operations at the time of the

11

bankruptcy filing, the court had no choice but to look at the interrelationships of the corporate directors and officers of the various corporations, and to who acted on behalf of each in the bankruptcy proceeding, in determining that Scattered was an insider. The finding was consistent with the Code's definition of an insider as a person in control of the debtor.

Furthermore, Appellants make no argument challenging the bankruptcy court's alternative finding that even if Scattered did not qualify as an insider under § 101(31),[9] it is a "non-statutory insider." *See Krehl*, 86 F.3d at 741 ("By virtue of the nonlimiting term 'includes,' [the definition of insider at § 101(31)] is intended to be illustrative rather than exhaustive." (internal citations omitted)). Rather than addressing that issue, appellants argue that (even if Scattered is an insider), confirmation would not defeat the policy behind § 1129, citing *In re Dunes Hotel Assocs.*, 194 B.R. 994 (Bankr. D.S.C. 1995), and *In re Global Water Technologies, Inc.*, 311 B.R. 896, 903 (Bankr. D. Colo. 2004). Paraphrasing *Dunes Hotel*, appellants argues, "Section 1129(a)(1) is designed to prevent cramdown of a plan from being triggered unless a legitimate creditor finds the plan's treatment of its claim acceptable." Scattered's Br. at 8 (Dkt. No. 14). Appellants overlook, however, that the court in *Dunes Hotel* denied confirmation because the creditor at issue was an insider. *Dunes Hotel*, 194 B.R. at 999. They cite *Global Water Technologies* for the proposition that where the creditors vote for confirmation and the plan does not prejudice or harm anyone, the plan can be confirmed. This unremarkable proposition, however, does not undermine the requirement that *all* requirements of § 1129 must be met or the fact that insider creditors were not at issue in that case.

---

[9]The court pointed out the difficulty of relying on reported cases because they "typically discuss 'control' of debtors that are (or recently were) operating businesses and going concerns, not defunct corporate shells." Goldgar Op. at 15.

Challenging the bankruptcy court's finding that '[t]he relationship is close enough to justify an insider finding," appellants sarcastically comment that "'close enough' may be outcome-determinative in horseshoes but not in application of bankruptcy law." Appellants' Br. at 8 (Dkt. No. 14). The use of the term "close enough" instead of the *Krehl* opinion's "sufficiently close" is hardly a basis for overruling the bankruptcy court's conclusion that Scattered is an insider. In *Krehl*, the court affirmed the bankruptcy court's finding that the corporation was an insider of the debtor where the debtor "was for all intents and purposes the corporate entity itself." *Krehl*, 86 F.3d at 742. Here, Greenblatt was for all intents and purposes Scattered and South Beach. Greenblatt was a shareholder of Scattered, acted on behalf of Scattered, and "managed" South Beach by making all decisions pertaining to it.

In short, the bankruptcy court's findings of historical facts are consistent with the record evidence and its conclusion that South Beach failed to prove that Scattered was not an insider is correct as a matter of law.

### C. Principal purpose of the plan.

Section 1129(d) prohibits confirmation of a chapter 11 plan if its principal purpose is the avoidance of taxes. The United States Trustee had the burden to prove this objection. *See* § 1129 ("In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance."). In arguing that tax avoidance was not the principal purpose of its plan, appellants assert, first, that South Beach did not need a confirmed plan to benefit from the ability to offset its NOLs from income under the Internal Revenue Code. Second, they contend that the intent to avoid litigation was indeed the plan's purpose.

The bankruptcy court inferred that the purpose was to take advantage of tax benefits from the facts that the disclosure statement explicitly stated that "the only way to monetize the sole valuable asset of the Debtor – the NOLs – is [ ] for the Debtor . . . . to utilize the tax benefits of the NOLs," Disclosure Statement at 7-8 (B. Dkt. No. 89); that South Beach asserted avoidance of litigation for the first time at the confirmation hearing (and only after the Trustee had objected to confirmation on this basis, by then two years after the petition was filed); and that even as late as the confirmation hearing no litigation had been filed by the identified creditors against South Beach. The court concluded that where the sole purpose was to enable South Beach to use the NOLs to take a tax deduction, the sole purpose was the avoidance of taxes, citing, *inter alia*, *Maxim*, 22 B.R. at 611-13 (denying confirmation where a debtor with "no business" to reorganize and "no assets except a potential tax loss" proposed to acquire a solvent company solely as a way to take advantage of the tax loss).

Greenblatt's belatedly professed litigation reason notwithstanding, the evidence supports the bankruptcy judge's inference that the only purpose of the plan was to avoid taxes. Whether South Beach or Scattered could have offset the NOLs without the plan, as they now argue contrary to their position taken before the bankruptcy court that the plan was *necessary*, is immaterial to what was the actual purpose of the plan.

### D. "Otherwise confirmable."

Appellants argue that where there is but one impaired creditor class and that class is an insider who either votes for or does not object to the plan "the plan could be confirmed as a

matter of law akin to a cramdown." Appellants' Br. at 9 (Dkt. No. 14).The bankruptcy court correctly rejected this argument. Goldgar Op. at 17-18. Appellants cite no authority for this proposition and court knows of none. They assert no rationale for how the bankruptcy court misinterpreted § 1129(a) or cite court cases applying principles of statutory interpretation supporting a conclusion that a plan can be confirmed even if all creditors are insiders.

**ORDER**

The bankruptcy court's finding that the only creditor who voted for the plan is an insider is correct in fact and law. The bankruptcy court's finding that the purpose of the debtor's plan was to avoid taxes is not clearly erroneous. The bankruptcy court's denial of confirmation because all the requirements of § 1129 could not be met was proper and its dismissal of the case was not an abuse of discretion. The judgment of the bankruptcy court is affirmed.

ENTER:

Dated: July 24, 2009

JOAN HUMPHREY LEFKOW
United States District Judge